IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KAREN GAUEN )<br>)<br>     Plaintiff, )<br>)<br>vs )<br>)<br>BOARD OF EDUCATION OF THE )<br>HIGHLAND COMMUNITY UNIT )<br>SCHOOL DISTRICT NO. 5, )<br>)<br>     Defendant. ) | No. 3:16-CV-00207 |

**PLAINTIFF'S PRE-TRIAL BRIEF**

The purpose of this pre-trial brief is to set forth Plaintiff Karen Gauen's theory of liability and to address two issues that arose during the final pretrial conference on November 8, 2017.

**I.**

Dr. Gauen has been the Principal of the Highland High School for the past five school years, and was the Assistant Principal of the High School for the school year immediately before becoming Principal. She brought this lawsuit alleging that the Defendant Board of Education, acting through Superintendent Michael Sutton, paid her less compensation for her services as Principal and Assistant Principal than her male counterparts in violation of the federal Equal Pay Act, the Illinois Equal Pay Act, and Title VII of the Civil Rights Act of 1964. Dr. Gauen will discuss her Equal Pay Act claims first and then, more briefly, her Title VII claim.

The liability provisions of the federal EPA and the Illinois EPA (though not their damages provisions) are substantially the same. As a result, they are construed in harmony with each other. **Bowbin v. Bulkmatic Transport**, 2007 U.S. Dist. LEXIS 83740 at *13-14 (N.D. Ill. Nov. 13, 2007).

To establish a prima facie case under the EPA, Dr. Gauen need only show that she was

1

paid less than a male employee for performing substantially equal work. **Cullen v. Indiana University**, 338 F.3d 693, 698-699 (7th Cir. 2003). Once she has done this, the burden of proof shifts to Defendant to establish as an affirmative defense that the unequal pay was due to one of four factors -- the relevant one in this case being the catch-all "factor other than sex." **Id**. at 702.

The evidence is clear that the duties and responsibilities of the Principal of the Highland High School, as well as those of an Assistant Principal, are substantially the same regardless of who is performing them.

Equally clear is the evidence that Dr. Gauen was compensated at a lower base salary than her male peers who held the positions of Principal and Assistant Principal. During her first year as Principal, Superintendent Sutton paid Dr. Gauen $89,000 while he paid her predecessor in the job, Derek Hacke, $107,825 during the prior year. This is a 21% differential  Just before Dr. Gauen was promoted to Principal, Sutton paid Dr. Gauen $79,000 as an Assistant Principal while he paid her replacement in the same job, Chris Becker, $90,000. This is a 14% differential. In addition, Sutton paid Dr. Gauen $79,000 as an Assistant Principal while he paid her predecessor in the job, Barry Thomas, $105,349. This is a 33% differential. Sutton also paid the other Assistant Principal who worked with Dr. Gauen during this year, Steve Lanxon, $95,527. This is a 21% differential.

According to Defendant, Dr. Gauen received less compensation than Messrs. Hacke, Becker, Lanxon and Thomas because she had less administrative experience. There is a wealth of evidence, however, that its explanation is false and contrived, a pretext to cover up sex bias.

The most telling evidence of pay discrimination is Superintendent Sutton's treatment of Dr. Gauen in relation to Chris Becker. Sutton rejected Becker for the position of Principal at the High School and chose Dr. Gauen instead. He then hired Becker for the position of Assistant Principal to fill the vacancy left by Dr. Gauen when she moved up to Principal. Several facets of Sutton's conduct cast doubt on the purity of his motives.

Sutton selected Dr. Gauen to be Principal rather than Becker despite the fact that she had *less* prior administrative experience than he did. She had been an Assistant Principal for one year while he had been an Assistant Principal for nine years. This contradicts Sutton's claim that he attached decisive importance to prior administrative experience in evaluating the ability, and therefore the pay, of administrative personnel.

Other problems, even deeper ones, plague Defendant's position. A striking feature of this case is that Sutton paid Becker, the Assistant Principal, a higher base salary ($90,000) than he paid Dr. Gauen, the Principal ($89,000). This despite the fact that Sutton had already determined that Dr. Gauen was more qualified than Becker to serve as a high school administrator by choosing her over him for the important position of Principal. Sutton's conduct invites skepticism. Pay to employees is a function of their value to their employers which in turn is a function of their qualifications. Principals of high schools earn more than Assistant Principals because, as Sutton has acknowledged, they deliver more value to the schools -- they exercise greater responsibility in a position where "the buck stops." Yet Sutton went out of his way to set the salary of the male subordinate, Becker, at a higher level than the salary of his female supervisor, Dr. Gauen.[1]

Courts have taken a dim view of such conduct. For example, one court has said that "we have no difficulty agreeing that plaintiff can survive summary judgment by pointing to the fact that defendant paid subordinates more than plaintiff as proof of defendants' intentional discrimination." **Sharpe v. Global Security**, 766 F. Supp. 2d 1272, 1299 (S.D. Ala. 2011). This stands to reason, since if the employer pays a male subordinate more than a female superior because he is supposedly more capable by reason of his greater experience, why isn't he the

---

[1] It bears emphasis that a woman in a higher-ranking job who is paid less than a man she supervises in a lower-ranking job can state a valid EPA claim even though the two jobs are by definition unequal. **Riordan v. Kempiners**, 831 F. 2d 690, 699 (7th Cir. 1987); see also **Mulhall v. Advance Security**, 19 F.3d 586-598-99 (11th Cir. 1994) (discussing **Riordan**).

superior rather than the subordinate?

Yet another problem shadows Defendant's position. Superintendent Sutton paid Becker $11,000 more than Dr. Gauen to perform the identical job of Assistant Principal, claiming that he was justified in doing so because Becker had more administrative experience. Again, the argument is self-discrediting. Having decided that Becker was less qualified than Dr. Gauen to be a school administrator, as shown by the fact that he chose her over him for the position of Principal, Sutton was in no position to turn around and, in an abrupt about-face, decide that Becker should be paid more than Dr. Gauen because he was somehow more qualified by virtue of his longer experience as a school administrator.

Defendant's position is a mess of contradictions. The sheer strangeness of its pay decisions shows that sex bias likely factored into them -- that they were not based on a "factor other than sex." **Hobgood v. Illinois Gaming**, 731 F.3d 635, 646 (7th Cir. 2013). This conclusion gains further support from no less than four statements made by Defendant's own school officials that qualify as party-admissions.

Three of the statements reveal that the school officials understood that Dr. Gauen was underpaid as Principal of the High School, especially relative to Becker, her underling. Sutton told Dr. Gauen that, after she retired, Becker would become the Principal and that he would be able to pay him more than he had paid her. In fact, Sutton told her that Becker would not work as Principal for what he paid her. Hacke, the outgoing Principal, told Dr. Gauen that he expected that she would be paid "in the low six figures" as the new Principal (She got only $89,000). When Dr. Gauen noted that she had only recently become an administrator, Hacke reassured her, telling her "it doesn't matter" because she had already accumulated enough experience to do the same kind of work that he was doing as Principal. Finally, Becker *apologized* to Dr. Gauen when he found out that he was making more money than she was, even though he was her subordinate.

The fourth admission may be the richest in significance because it shows that Sutton's thinking was infected with a sex-based stereotype. There are still some men who believe, more than two generations after the federal EPA was enacted, that women do not need to be paid the same compensation as men for doing the same work because they are not the primary "breadwinners" for their families. The money they earn, they think, is merely "extra" money that serves to supplement the incomes of their husbands.

It seems clear that Superintendent Sutton is such a man. He suggested to Dr. Gauen, when she voiced concern about being paid less than Becker, that he gave Becker a higher salary because he had to relocate from Springfield, Illinois to Highland, Illinois. But Sutton did not cast this suggestion, which as discussed below is baseless, in gender-neutral terms; instead, he cast it in overtly gender-biased terms. He told her "You're a hometown girl who can't expect to make as much money as a man bringing his family down here." Dr. Gauen objected that "I have a family too" and explained that she is a "major wage earner" for her family too. But Sutton waved away her concerns, telling her "You should go somewhere else if you want to get more money."

Sutton's statement encodes a discriminatory bias which likely influenced his pay-setting decisions. He did not think that Dr. Gauen, as a "girl," deserved as much pay for her work as Becker because he is a "man" who needed more money to support his family.

Considered as a whole, the evidence shows that Defendant cannot carry its burden of proving that the disparity in pay between Dr. Gauen and Becker was due to a consideration other than sex. This is sufficient, without more, to allow a jury to return a verdict in favor of plaintiff because she is only required to point to one male employee, not more than one, who was treated more favorably with regard to compensation in order to state a valid claim under the EPA. **Dove v. DePuy Orthopedics**, 2005 U.S. Dist. LEXIS 14457 at * 7-8 (N.D. Ind. July 18, 2005).

Nevertheless, it is important to address the disparity in pay between Dr. Gauen and her

other opposite-sex comparators, namely Hacke, Lanxon and Thomas. In doing so, however, it must be kept in mind that the compelling evidence that Sutton discriminated against Dr. Gauen vis-à-vis Becker colors and give meaning to his treatment of her vis-à-vis Hacke, Lanxon and Thomas, allowing the inference that it is all part of one complex tapestry of pay discrimination. **Rizzo v. Means Services**, 632 F. Supp. 1115, 1129 (N.D. Ill. 1986).

According to Defendant, Dr. Gauen received a lower base salary than Hacke (for the job of Principal) and Lanxon and Thomas (for the job of Assistant Principal) because she had fewer years of administrative experience. In addition to the reasons already given, however, Defendant's explanation is unworthy of belief for several reasons.

First, it is refuted by Superintendent Sutton's own conduct. One would expect that, if administrative experience were the key determinant of salary, Sutton would have set the salaries of the administrators in the school district in accordance with it. Routinely, however, he did not.

There are many examples. Sutton paid Hacke in his first year as Principal $7,225 more in annual pay than he paid his immediate predecessor, Josh Ebner, in his last year as Principal ($100,000 versus $92,775). He did this even though the two men had the exact same number of years of experience (eight) as administrators. Sutton paid Lanxon only 8% more than Becker to serve as an Assistant Principal in the year that Becker arrived in Highland ($97,427 versus $90,000). Yet Lanxon had twice as much administrative experience as Becker (18 years versus 9 years). Hacke had considerably less administrative experience (10 years) than either Lanxon (15 years) or Thomas (25 years), his two Assistant Principals in the last year they all worked together. Nevertheless, Sutton paid Hacke more for his services ($106,832 after subtracting the $10,000 bump in salary he got in lieu of health insurance) than he paid Lanxon for his services ($93,425) or Thomas for his services ($99,414 after subtracting the 12% bump in salary he got because he was retiring). Finally, Sutton paid the Assistant Principal of the Highland middle school, Vince

Hughes, $3,530 less per year than the Principal of that school, Erick Baer, notwithstanding the fact that Hughes had five more years of administrative experience than Baer

These facts trace a pattern of pay decisions by Sutton that clash with his claim that he paid Dr. Gauen less compensation than her male peers because she had less administrative experience.

Second, a significant problem with Defendant's administrative experience explanation is that it comes too late in the day to be credible. At no time during the hiring process for Principal and Assistant Principal did Superintendent Sutton (or anybody else) ever suggest to Dr. Gauen that prior administrative experience was a relevant, let alone a decisive, consideration for the positions. Indeed, Dr. Gauen has testified that "it was my teaching experience . . . that was accepted as valuable" during the hiring process.

Subsequently, after being selected as Assistant Principal and Principal, Dr. Gauen asked Sutton, at least three different times, to explain why she was compensated at a lower salary than the men who held these positions. He said nothing about administrative experience and, in fact, gave no reason at all for the pay disparity. Lacking any good explanation for his conduct, Sutton turned to mockery, repeatedly telling Dr. Gauen: "Take it or leave it. You can go somewhere else."

Sutton's conduct is highly suspect. If administrative experience were really the reason for the salary imbalance Sutton would have mentioned it, indeed trumpeted it, when Dr. Gauen sought an explanation for it. The fact that he did not permits, almost compels, the conclusion that it was not the true reason -- that it was concocted after Dr. Gauen filed an EEOC charge as a convenient excuse for sex-based pay discrimination. **Emmel v. Coca-Cola Bottling Co.,** 95 F.3d 627, 634 (7th Cir. 1996).

Third, school administrators are drawn from the ranks of school teachers. Dr. Gauen has pointed out, and Hacke has agreed, that "you can't be a good administrator if you don't know how

7

to teach." Dr. Gauen should have been paid as much as (or more than) her male comparators because her experience as a teacher dwarfed theirs. She had 5.4 times more years of teaching experience than Hacke, her predecessor as Principal (38 years versus 7 years); 4.6 times more years of teaching experience than Becker, her successor as Assistant Principal and her subordinate when she was Principal (38 years versus 8 years); 3.8 times more years of teaching experience than Lanxon, her colleague as Assistant Principal (38 years versus 10 years); and 5.4 times more years of experience than Thomas, her predecessor as Assistant Principal (38 years versus 7 years). Despite her superior credentials as an educator, Sutton paid Dr. Gauen less compensation, significantly less, than every one of these men.

According to Defendant, it "prioritized" administrative experience over teaching experience as the "primary" consideration in hiring and paying its administrators. However, its own job announcements contradict its claim. The vacancy announcement for Assistant Principal did not require any administrative experience at all. It only called for a Type 75 certificate which can be obtained without such experience. Nor did the vacancy announcement for Principal require any administrative experience to be hired for the position. It listed seven qualifications most of which, such as knowledge of curriculum and instruction, can be obtained by teaching.

What Defendant is doing in this case is grossly exaggerating the importance of Dr. Gauen's relative lack of experience as an administrator while, at the same time, grossly minimizing the importance of her relative wealth of experience as a teacher. All in an effort to camouflage the unlawful bias that motivated its pay-setting decisions.

There is another way in which Dr. Gauen was superior to Hacke, Becker, Thomas and Lanxon but was nonetheless paid an inferior salary. Unlike these men, Dr. Gauen had a doctorate in education administration, which she earned shortly before she became an administrator at the High School. Defendant slights the importance of this achievement, claiming that level of

8

academic achievement is irrelevant to its employment and compensation decisions.

But Defendant's argument is undermined by the testimony of its own officials. For example, Assistant Superintendent Hacke acknowledged that a doctorate degree in education administration can enhance an administrator's job performance if it reflects studies in, or the writing of a thesis about, curriculum and instruction, which lie at the heart of the educational mission of a high school. Significantly, Dr. Gauen's course work leading to her doctorate focused on curriculum and instruction and her thesis focused on the Instructional Practices Inventory (IPI), a process for studying student engagement in learning and improving instructional practices in a school. Hacke testified that Dr. Gauen possesses a "great knowledge base" and has successfully implemented the IPI at the Highland High School which has helped to lift it into the top tier of public secondary schools in the Metro East area.

Fourth, there is evidence that Sutton singled Dr. Gauen out for unfavorable treatment with regard to health insurance benefits. When he hired Hacke as Principal, Sutton hiked his salary by $10,000 in exchange for his giving up health insurance benefits, which he did not need because his wife had coverage in her own job. In contrast, Sutton never offered to boost Dr. Gauen's salary by $10,000 as a cash replacement for health insurance benefits even though, had he bothered to ask, he would have found out that her husband, like Hacke's wife, had coverage in his own job. Such disparate treatment of a male candidate and a female candidate for Principal is evidence of discrimination. In fact, it *is* discrimination.

Finally, Defendant's claim that prior administrative experience is crucial to proper performance of the duties of Principal and Assistant Principal is upended by reality. Despite her claimed lack of administrative experience, Dr. Gauen was hired as an Assistant Principal and performed so well that, only one year later, she was promoted to Principal. As Principal, her performance has been outstanding, earning accolades from Hacke, the current Assistant

9

Superintendent, who said in his deposition that she has done a "great job in instructional leadership," leading to markedly improved test scores by students. During Dr. Gauen's tenure, Highland has risen into the top 100, and more recently, the top 50 public high schools in Illinois as measured by test scores and, what may be even more impressive, is now the top scoring public high school in the Metro East area. One wonders: how could Dr. Gauen have achieved so much success with so little of the administrative experience that Defendant claims is essential to it?

Defendant has suggested that Becker and Hacke (but not Lanxon and Thomas) got higher salaries because they moved to the Highland school district. But there is no documentary evidence to support such a claim. Moreover, even if there were such evidence, Defendant has the burden of proving that it *had* to pay Becker and Hacke a premium in order to get them to come to Highland -- that it could not have obtained their services without it. **Mickelson v. N.Y. Life Ins.**, 460 F.3d 1304, 1313-1314 (10th Cir. 2000). It cannot carry its burden because the evidence shows that Becker was unemployed, having lost his job in Springfield, Illinois, and Hacke, though employed in Roxana, Illinois, was keenly interested in relocating to Highland as his "destination district," having previously applied, without success, to become the Principal of the Highland High School.

Defendant has argued that Lanxon is not a proper comparator of Dr. Gauen because, although he was an Assistant Principal like her, he was also the athletic director for the Highland High School. There were two Assistant Principals at the school, and one of them served as the athletic director. The argument is without merit. The mere fact that job A is somewhat different from job B does not prevent them from being treated as equal under the EPA when the employer itself has treated them as equal in terms of skill or pay. **Schultz v. Wheaton Glass,** 421 F.2d 259, 265-266 (3d Cir. 1990); 29 C.F.R § 1620.20. Notably, Hacke has acknowledged that the job of Assistant Principal, whether it does or does not include athletic duties, requires the same level of skill, effort and responsibility to perform. Indeed, Hacke has testified that the position of Assistant

10

Principal, to the extent it includes the athletic duties, normally pays *less* than the regular position of Assistant Principal, owing to the fact that Defendant considers it to be an "entry level position."

It does not help Defendant, it hurts it, to bring up the topic of Caleb Houchins. He was a teacher who was hired, with no administrative experience and only 12 years of teaching experience, to be an Assistant Principal at the High School during the time that Dr. Gauen was Principal. Defendant emphasizes the fact, as if it matters, that Houchins was paid a lower salary than Dr. Gauen when she was an Assistant Principal. Realistically, however, Sutton had no choice but to pay Houchins less than Dr. Gauen because he was *substantially* less qualified than she was. Under these circumstances, Sutton could hardly expect to get away with paying Houchins more money than Dr. Gauen, especially in light of the fact that she had previously lodged complaints of gender-based pay discrimination against him.

Moreover, it commonly happened that teachers who became administrators made more money on an annual basis but less money on a per diem basis because they worked 12 months as administrators but only 9 months as teachers. There is evidence that Sutton endeavored to pay a per diem rate to administrators that came close to their per diem rate as teachers. Sutton did this for the man, Houchins, by reducing his per diem rate by only 12% ($307.78 per day as a teacher versus $269.23 as an Assistant Principal) but not for the woman, Dr. Gauen, by reducing her per diem rate by 30% ($432.70 per day as a teacher versus $303.85 per day). The gap is wide, and tilts the evidence further in the direction of the conclusion that sex played a role in Sutton's pay-setting decisions.

Defendant has imputed a spurious significance to the fact that two administrators in the mid-1990s and the early 2000s (Thomas and Pat Schwarm) were paid higher salaries than two other administrators in the same positions who had less administrative experience (Lanxon and Marvin Warner). There is no evidence that the difference in administrative experience accounts for

11

the difference in pay. What is more, Sutton was not even around during these time periods; he did not come to Highland until 2008. It is Sutton's state of mind, not that of some prior Superintendent, that matters in this case.

Plaintiff Gauen can be brief in discussing her Title VII claim. Based on the evidence set out above, it is reasonable to conclude that Defendant's asserted reason for the challenged pay disparities between Dr. Gauen and her male comparators, namely administrative experience, was not the true reason -- that it was merely a pretext to hide sex discrimination. Under these circumstances, Dr. Gauen has a valid Title VII claim. **King v. Acosta Sales,** 678 F.3d 470, 474 (7th Cir. 2012).

## II.

Most of the issues expected to arise at the trial of this case have already been addressed by the Court in ruling upon the motions in limine. However, there are two additional issues, raised by the parties at the final pretrial conference, which warrant discussion here. See Minutes of Final Pretrial Conference (Document 52).

First, Dr. Gauen submits that Defendant has waived any defense against her claim for liquidated damages under the federal Equal Pay Act in the event that the jury returns a verdict in her favor (the Illinois EPA does not authorize liquidated damages). This is because Defendant failed to plead in its answer the affirmative defense to liquidated damages set forth in 29 U.S.C. § 260. Section 260 provides that, if the employer has been found guilty of pay discrimination, it will be liable for liquidated damages (double the amount of the employee's lost compensation) unless it shows to the satisfaction of the Court that it acted in "good faith" and had "reasonable grounds" for believing that its conduct was lawful. The Seventh Circuit has emphasized that there is a "strong presumption" in favor of awarding liquidated damages to a victim of pay discrimination. **Walton v. United Consumers Club**, 789 F.2d 303, 310 (7th Cir. 1986).

Defendant asserted only one affirmative defense in its answer to Dr. Gauen's complaint. Notably, it was not the one authorized by 29 U.S.C. § 260 which is aimed at avoiding an award of liquidated damages. Rather, it was a different one authorized by a different provision of the statute, 29 U.S.C. §206(d)(1), which is aimed at avoiding any liability at all due to a claimed reliance on "factors other than sex" in setting the challenged compensation. See Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint at p. 20. Needless to say, Defendant cannot argue that by asserting the latter affirmative defense it also asserted the former affirmative defense; the defense to liquidated damages only comes into play *after* the defense to liability has already failed -- and therefore requires something more by way of evidence to successfully establish it.

Defendant's failure to plead the affirmative defense to liquidated damages provided by Section 260 means that it has forfeited it. "We have stated numerous times that if a defendant does not raise defenses at the time of filing an answer, those defenses are deemed waived." **Castro v. Chicago Housing Auth.**, 360 F.3d 721, 735 (7th Cir. 2004). Defendant filed its answer to Dr. Gauen's complaint almost two years ago in April 2016. Yet it did not include the affirmative defense in the answer and, tellingly, has never asked for leave to amend the answer to include it. To allow Defendant to pursue the defense at this late stage of the proceeding, long after the close of discovery, would substantially prejudice Dr. Gauen by denying her the opportunity to understand the defense and to gather proper evidence to counter and defeat it. "Once the availability of an affirmative defense is reasonably apparent, the defendant must alert the parties and the court to his intent to pursue that defense. A defendant should not be permitted to lie behind a log and ambush a plaintiff with an unexpected defense." **Venters v. City of Delphi**, 123 F.3d 956, 967-968 (7th Cir. 1997).

According to Defendant, the defense to liquidated damages authorized by Section 260 is

13

not an affirmative defense that it had to plead in its answer. It suggested at the pre-trial conference that no court in the Seventh Circuit has ever labeled it as an affirmative defense. But this turns out to be untrue. Defendant overlooks the fact that the Equal Pay Act is part of the Fair Labor Standards Act and, as such, shares the same remedial provisions with it, including Section 260. **Soto v. Adams Elevator Equip. Co.**, 941 F.2d 543, 551 n.12 (7th Cir. 1991); **EEOC v. First Baptist Church**, 1991 U.S. Dist. LEXIS 18210 at *11-12 (N.D. Ind. Aug. 5, 1991). Judicial decisions construing Section 260 under the FLSA are therefore authoritative and binding under the EPA.

Significantly, courts in the Seventh Circuit are united in recognizing that the "good faith" and "reasonable grounds" argument against an award of liquidated damages is an affirmative defense under the FLSA. See, e.g., **Castro**, 360 F.3d at 730 and n.4; **Pietrzycki v. Heights Tower Service**, 2015 U.S. Dist. LEXIS 18814 at * 7-8 (N.D. Ill. Feb. 17, 2015); **Morgan v. Speakeasy, LLC,** 625 F. Supp. 2d 632, 657-58 (N.D. Ill. 2007); **Perez v. Five M's**, 2017 U.S. Dist. LEXIS 28467 at *29 (N.D. Ind. Mar. 1, 2017); **Okoro v. Pyramid**, 2012 U.S. Dist. LEXIS 191106 at *2 (E.D. Wis. Nov. 15, 2012). Given the overlap in coverage between the FLSA and the EPA, the same result necessarily obtains under the EPA.

Against this conclusion, Defendant has crafted an argument based on a comparison of 29 U.S.C. § 260 with its neighbor, 29 U.S.C. § 259. It has pointed out that Section 259 requires that the defense of reliance on administrative rulings must be "pleaded and proved" by the employer whereas Section 260 merely requires that the defense of good faith and reasonable grounds be "shown" by the employer. It says nothing about the employer having to plead the defense.

This is reading too much into too little. There is no good reason why Congress should have wanted the two provisions of the statute, closely allied as they are, to have completely different pleading requirements. To say that one is an affirmative defense while the other is not would be

14

senseless. And senseless interpretations of statutory language are to be shunned -- not embraced -- because "[courts] do not want to insult the legislature by attributing absurdities to it." **Krzalic v. Republic Title Co.,** 314 F.3d 875, 880 (7th Cir. 2002).

There is, in fact, good reason to believe that Congress wanted Section 260 to be an affirmative defense. The essence of such a defense is that it assumes X but allows the defendant to prove Y in order to avoid X. See F.R.Civ.P. 8(c); **Porter v. Waukegan Sch. Dist.,** 1996 U.S. Dist. LEXIS 14829 at * 3 (N.D. Ill. Oct. 7, 1996). Section 260 assumes that the Defendant school district is liable for liquidated damages (assumes, indeed, that it is liable for pay discrimination against Dr. Gauen) but nevertheless offers it an escape hatch to avoid liquidated damages by carrying the heavy burden of proving that it acted in good faith and with reasonable grounds for believing that it was not violating the EPA. This is the very definition of an affirmative defense and Congress, having written Section 260 the way it did, must have understood that it would be treated as such by courts. Yet it said nothing to negate such a result, which suggests that it approved of it.

Dr. Gauen urges the Court follow such cases as **Dutcher v. Randall Foods**, 546 N.W.2d 889 (Iowa 1996), where it was held that Section 260 is an affirmative defense to the employee's claim for liquidated damages which, if not timely pleaded in the answer, is waived by the employer. **Id**. at 893.

The second issue that warrants discussion by Dr. Gauen is Defendant's argument that she should be required to identify her male comparators. These are the men who were paid a higher salary than she was for doing substantially the same work as Principal or Assistant Principal of the High School.

It is not entirely clear to Dr. Gauen what Defendant is complaining about. Her male comparators, all of whom were the Principal or an Assistant Principal at the High School, are

15

Derek Hacke, Chris Becker, Barry Thomas, Steve Lanxon and Caleb Houchins. The identity of these five men has been known to Defendant throughout the litigation. They were identified in the complaint and answer (Documents 1 and 6), during the course of discovery, in the motion for summary judgment and response to it (Documents 27 and 34), and now in this pre-trial brief.

It may be that Defendant is seeking to prevent Dr. Gauen from introducing any evidence at trial about other male employees of the school district, such as Vince Hughes or Erick Baer, who did not work at the High School. But information about them is relevant, not because they are Dr. Gauen's comparators, but because Superintendent Sutton did not pay them in accordance with their administrative experience. See infra at pp. 6-7. This is powerful evidence that his claim that he relied on administrative experience in paying Dr. Gauen a lower salary than her male comparators is unworthy of belief. As such, it must be freely admitted at trial.

Defendant may also be arguing that the five male comparators of Dr. Gauen should be identified by name in the jury instructions. This would be improper, however, for two reasons. First, it would clutter the instructions with evidentiary detail and invite the confusion and error that often accompanies needless complexity. Second, it would contradict the Seventh Circuit's pattern jury instructions which contemplate that the plaintiff's male comparators in an EPA case will be identified generally as "male employees" or "plaintiff's co-workers" or "other employees" rather than specifically by their individual names. See Federal Civil Jury Instructions of the Seventh Circuit, Nos. 5.01, 5.07, 5.08, 5.10 and 5.11, at pp. 115, 121-122, 124-125. After hearing the evidence and the arguments of the parties over the course of the trial, the jurors will have no trouble understanding the identity of Dr. Gauen's male comparators when it comes time to finally submit the case to them for decision.

16

        SEDEY HARPER WESTHOFF
        Attorneys for Plaintiff

        */s/ John D. Lynn*
        John D. Lynn, #30064
        Donna L. Harper, #26406
        Jessica M. Scales, #64136
        2711 Clifton Ave.
        St. Louis, MO 63139
        314/773-3566
        314/773-3615 (fax)
        jlynn@sedeyharper.com
        dharper@sedeyharper.com
        jscales@sedeyharper.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2018 the foregoing document was served via the Court's Electronic Filing System upon the following counsel of record:

C. Frazier Satterly
Hodges, Loizzi, Eisenhammer, Rodick and Kohn, LLP
401 SW Water Street Suite 106
Peoria, IL 61602
fsatterly@hlerk.com

        */s/ John D. Lynn*