IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KAREN GAUEN, Ed.D, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-cv-00207 |
| | ) | |
| BOARD OF EDUCATION OF | ) | |
| HIGHLAND COMMUNITY UNIT | ) | |
| SCHOOL DISTRICT NO. 5, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S TRIAL BRIEF

Defendant, the Board of Education of Highland Community Unit School District No. 5 ("District" or "Defendant"), through its attorneys, Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, hereby submits its trial brief as directed by the Court during the Final Pretrial Conference held on November 8, 2017:

## DISTRICT'S THEORY OF DEFENSE

**I.    The District's Affirmative Defense Encompasses the District's Theory of Defense**

This case boils down to the simple maxim that an employer in any industry may choose to hire a veteran executive or give someone their first shot at a management position but our laws do not require the employer to offer both candidates the same starting salary and it strains reason to imagine a scenario where any employer would do so.  Yet that is precisely Plaintiff's claim in this case—she contends that even though she had never worked a day in the Assistant Principal or Principal position the Board of Education should have paid her (with taxpayer dollars) the same amount as others who held the job for over twenty years.  The District has never made salary decisions that way for man or woman, and it would defy logic to suggest it had a legal obligation to do so here.

1

Defendant's defense has been consistent and steadfast throughout the course of this litigation, and is properly encompassed in the District's Answer and Affirmative Defense to Plaintiff's Complaint, which states:

> "Plaintiff's complained-of pay differential is based on factors other than sex, and is free from discriminatory animus. 29 U.S.C. 206(d)(1); 820 ILCS 112/10(a)(4). Specifically, it is the District's practice to determine and establish administrator salaries based upon, among other things, a candidate's prior administrative experience and seniority in the position. The District's salary determinations based on objective factors other than gender are applied equally across the sexes." Doc. 6, ¶20

This affirmative defense has been fleshed out and further supported by both deposition testimony and documentary evidence. Starting salaries for administrative positions at the high school are determined on a case-by-case basis, with the primary consideration being a candidate's successful administrative experience relevant to the position and the ability to lead. This is further demonstrated by the District's vacancy posting for the Principal position, which clearly states that administrator compensation is based on prior administrative experience. The District looks to a candidate's building-level administrative experience—such as previously holding an assistant principal position—as relevant experience that would factor into initial pay determinations. The District does not limit its inquiry into the number of years of administrative experience that a candidate has—the type of administrative experience also matters, e.g. number of students, position, grade-level, etc. The evidence presented in discovery also establishes that other non-gender based factors affect a candidate's starting salary, namely prior salary in another district, incentive to relocate, and budgetary considerations.

The District does not base administrative salary decisions on the level of educational attainment of a candidate, *i.e.*, a masters or doctorate degree; nor does the District pay administrators additional compensation for attaining additional education once employed. There

is no formal written policy regarding administrative starting salaries, nor does the District have a formal written policy with respect to administrative salaries after a candidate is hired. Notably, the District does not consider experience as an administrative intern as relevant administrative experience, as that is not building level experience.  Importantly, despite relying on these factors to support her case for why she should have been paid more, Plaintiff has not, and cannot, point to any administrator within the District for whom these factors resulted in higher administrative pay.

There are some additional points of note. The District does not consider "daily rate of pay" or "per diem pay" in making its administrator pay decisions. Gauen argues that her "daily rate of pay" decreased when she moved from a 9-month teaching position to a 12-month administrative position, but that is merely a product of the contractual teacher's salary schedule and that she moved into administration later in her career. Gauen cannot point to a single male teacher who was paid the same teacher salary as her who received a higher base salary increase than her when promoted to administration.

Nor does the District consider "experience in education" as a factor in making administrator pay decisions. Plaintiff relies on this value point in the purported summary exhibits submitted to chambers on November 7, 2017, and identified as Exhibits 122-131. Total years experience in education has never been identified in this litigation as a factor in determining administrator pay, nor is it relevant—the issue is how the District made compensation decisions, not how Plaintiff believes they should have been made[1].

---

[1] The District respectfully requests the Court set a pretrial conference to address additional objections to Plaintiff's exhibits as set forth in the parties' Joint Stipulated Exhibit List, these summary Exhibits 122-131 being a prime example.

Plaintiff will be hard pressed to convince a jury that she was entitled to a higher salary than administrators with 8, 12, 17, or 26 years more experience in their positions. Ultimately, her lack of administrative experience and seniority in those positions is fatal to all of her claims.

**DISPUTED ISSUES OF LAW FOR THE COURT**

**II.    The Good Faith Exception to Liquidated Damages Under the Equal Pay Act is an Issue of Law for This Court to Determine and is Properly Included in the Final Pretrial Order**

The Parties do not dispute that, if the jury were to find that that the District violated the Equal Pay Act, it is within the province and discretion of this Court to determine the amount of back pay and of liquidated damages, if any at all.

Rather, the disagreement arises from  Plaintiff's request that this Court rewrite the plain language of § 260 of the *Fair Labor Standards Act* ("FLSA") and impose a pleading requirement upon Defendant that does not exist. *See* 29 U.S.C. § 260. As set forth in Section V, ¶3a of the Proposed Final Pretrial Order (hereinafter "Pretrial Order"), it is the District's position that the Court has the discretion to decline an award of liquidated damages if "Defendant has shown that the act or omission giving rise to such action was in good faith and that Defendant had reasonable grounds for believing that the act or omission was not a violation of the Equal Pay Act." *See* Pretrial Order - Section V, ¶3a.

Plaintiff contends that this good faith exception to liquidated damages is an affirmative defense that the District failed to plead, and therefore waived. At the final pretrial conference, Plaintiff specifically argued that the District "has to do more than just say it didn't violate the law." That much is true—the District must show that it acted reasonably and in good faith. *See Bankston v. State of Ill.*, 60 F. 3d 1249, 1254 (7th Cir. 1995). That burden, however, does not

transform § 260 into an affirmative defense that must be pled in the answer. The District was not, and is not, required to plead a good faith affirmative defense to liquidated damages in order for this Court to consider if it acted reasonably and in good faith in making its administrative compensation decisions.

### A. Section 260 Does Not Require the District to Plead Good Faith to Avoid or Reduce a Liquidated Damages Award

Section 216(b) of the Fair Labor Standards Act ("FLSA") provides for the imposition of liquidated damages in the form of doubling the award for unpaid overtime compensation or unpaid minimum wages (or back pay if the employer violated the Equal Pay Act). See 29 U.S.C. § 216(b). Prior to the enactment of the Portal-to-Portal Act in 1947, district courts had no discretion in awarding liquidated damages—if an employer violated the act, doubling was mandatory. *See Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 581 (1942); *Walton v. United Consumers Club*, 786 F. 2d 303, 310 (7th Cir. 1986). Following the amendment, however, courts now have the discretion to award a lesser amount of liquidated damages or none at all if the employer can show "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA * * *." *Id*.; 29 U.S.C. § 260. The employer's good faith is a question of fact for the court, even when the rest of the case has been tried to a jury. *McClanahan v. Mathews*, 440 F. 2d 320, 322 (6th Cir. 1971); *Bertrand v. Orkin Exterminating Co.*, 454 F. Supp 78, 82 (N.D. Ill. 1978).

Plaintiff argues that the District is now barred from asserting, and the Court from considering, the good faith exception to liquidated damages because the District failed to affirmatively plead it. But the District cannot be barred from asserting this issue in the Pretrial Order when the statute contains no affirmative pleading requirement. Notably, § 260 provides a

limited exception to *damages* available under the EPA and the FLSA. This is a crucial distinction. Section 259, on the other hand, provides a complete bar to an employer's *liability* "if he *pleads and proves* that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States * * * Such defense, if established, shall be a bar to the action or proceeding * * *." 29 U.S.C. § 259 (emphasis added).

Conspicuously absent from § 260 is any enumerated "pleading" requirement for good faith. The word "plead" simply does not appear in § 260. The basic  principles of statutory construction dictate the result—had the legislature intended for employers to plead good faith with respect to liquidated damages as an affirmative defense, it would have expressly provided so, just as it did in § 259. *See Jackson v. Blitt & Gaines, P.C.*, 833 F. 3d 860, 863 (7th Cir. 2016) (as with all questions of statutory interpretation, we start with the text of the statute to ascertain its plain meaning). This is supported by case law interpreting § 259, not § 260, as an affirmative defense. *See, e.g., Bouchard v. Regional Governing Bd.*, 939 F. 2d 1323, 1327 (8th Cir. 1991) (characterizing good faith defense under FLSA § 259 as affirmative defense); *Cole v. Farm Fresh Poultry, Inc.*, 824 F. 2d 923, 925 (11th Cir. 1997) (Defendant "also raised an affirmative defense claiming that it qualified for the 'good faith' exemption of § 259."). *But cf.*, *Herman v. Palo Group Foster Home, Inc.*, 183 F. 3d 468, 474 (6th Cir. 1999) (in action for unpaid wages under FLSA, the court makes a general statement that the Portal-to-Portal Act provides a limited affirmative defense to the liquidated damages provision, but noted that because employer was already found to have acted willfully it negated any good faith defense); *Okoro v. Pyramid 4 Aegis*, 2012 WL 12356838 at *1 (E.D. Wis. 2012) (in action for unpaid wages under FLSA, court found that defendant "neither plead nor proved (nor even attempted to prove) a good faith

defense, thus plaintiff was entitled to liquidated damages); and *Wallace v. The Kiwi Group, Inc.*, 247 F.R.D. 679 (M.D. Fla. 2008) (where defendant employer defaulted and failed to answer plaintiff's claims of willful failure to pay minimum wage and overtime, the court found that defendant failed to present a good faith defense and plaintiff's were entitled to liquidated damages).[2, 3]

The only cases that appear to directly address the issue presented here are *Herndon v. Wm. A. Straub, Inc.*, 17 F. Supp. 2d 1056, 1063 (E.D. Mo. 1998) and *Dutcher v. Randall Foods*, 546 N.W. 2d 889 (1996). In *Dutcher*, the Iowa Supreme Court noted that "[a]lthough other sections of the Portal-to-Portal Act requires a particular defense to be 'pleaded and proved' by the employer, e.g. 29 U.S.C. §§ 258, 259, section 260 merely provides that the employer "show" good faith and reasonable grounds. *Id*. at 892. The court went on to note that section 260 does not address the necessity to plead a section 260 defense. Because the statute was silent on this issue, the court relied on the Iowa Rules of Civil Procedure in finding that section 260 required the defendant employer to affirmatively plead the good faith defense. *Id*. at 893.

However, in *Herndon v. Wm. A. Straub, Inc.*, 17 F. Supp. 2d 1056, 1063 (E.D. Mo. 1998), the district court found that *Dutcher* was not persuasive on that issue because it was not decided under the Federal Rules of Civil Procedure, and that while the statute places the burden

---

[2] The *Herman*, *Okoro*, and *Wallace* cases are all distinguishable, insofar as they involve an employer's failure to comply with the minimum wage and overtime requirements of the FLSA. None of the cases address the good faith exception to liquidated damages in the context of the EPA.. A good faith defense to a statutorily-mandated wage requirement is inherently different than a good faith to defense to a discretionary decision regarding compensation decisions in a large public school district.

[3] It bears noting that the cases cited by Plaintiff during the course of argument at the final pretrial order, *Castro v. Chicago Housing Authority*, 360 F. 3d 721 (7th Cir. 2004), and *Johnson v. Sullivan*, 922 F. 2d 246 (7th Cir. 1990), are inapposite. *Castro* involved a discussion of what constitutes good faith defense under the *Worker Adjustment and Retraining Notification Act* ("WARN") and *Johnson* addressed waiver of the 60-day statute of limitations in an action under Titles II and XVI of the *Social Security Act*. Neither case addresses the issue presented here—whether Defendant was required to plead good faith as a defense to liquidated damages in its responsive pleadings.

of proof on the employer, it does not address the necessity to plead a section 260 defense.  Under those circumstances, the court declined to hold that 29 U.S.C. § 260 must be pleaded as an affirmative defense, and considered plaintiff's entitlement to liquidated damages on the merits. *Id*. The reasoning of *Herndon* applies with equal force here.

Plaintiff's interpretation of § 260 is not what the legislature intended. Thus, Defendant's Section V, ¶3a is properly included in the final pretrial order.

> ### B. Even If the District Were Required to Plead the Good Faith Exception to Liquidated Damages as an Affirmative Defense, the District Effectively Did So By Denying the Allegations of Plaintiff's Complaint and Asserting an Affirmative Defense Pursuant to § 206(d)(1)

Even if this Court were to find that Defendant was required to plead good faith as an affirmative defense to liquidated damages, Section V, ¶3a must still be included in the Court's final pretrial order. The good faith defense is necessarily encompassed by the District's defense that it set pay based on administrative experience and seniority in the position, and the District has already put this matter at issue where it denied certain allegations of Plaintiff's complaint.

This conclusion is supported by *Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800 (N.D. Ill. 2000). In *Renalds*, plaintiff filed a complaint against S.R.G for sexual harassment, constructive discharge and retaliation in violation of Title VII. In answering the complaint, S.R.G. advanced 14 affirmative defenses, one of which stated that "at all times pertinent to this case, the Bar & Grill acted in good faith and did not intentionally or willfully discriminate against Plaintiff in violation of any federal laws." *Id*. at 804. On plaintiff's motion to strike the affirmative defense, the court found that it was an impermissible conclusory statement that failed to meet the pleading requirements of the Federal Rules of Civil Procedure. More importantly, the court noted that S.R.G. had "already put these matters in issue by denying certain allegations in

its answer, and defendant not only need not but cannot raise these matters again via an affirmative defense." *Id*.

While *Renalds* is a Title VII case, its application to the affirmative defense issue raised by Plaintiff here is clear—it would not make sense for Defendant to plead a separate affirmative defense to the imposition of liquidated damages where it has already put good faith at issue. Specifically, the affirmative defense asserted by the District states:

> "Plaintiff's complained-of pay differential is based on factors other than sex, and is free from discriminatory animus. 29 U.S.C. § 206(d)(1); 820 ILCS 112/10(a)(4). Specifically, it is the District's practice to determine and establish administrator salaries based upon, among other things, a candidate's prior administrative experience and seniority in the position. The District's salary determination based on objective factors other than gender are applied equally across the sexes." See Document 6, pg. 20.

Although the District's answer does not use the magic words "good faith" the District's answer clearly sets forth the position that the District acted reasonably and in good faith when it made its administrative pay decisions by considering objective facts, such as a candidate's prior administrative experience and seniority in the position. This is also borne out by those allegations that the District denied in its answer and affirmative defenses to Plaintiff's complaint. For example, the District denied that its conduct was "undertaken knowingly, willfully, maliciously or with reckless indifference to Plaintiff's rights;" that its conduct "in paying Dr. Gauen less than men as Assistant Principal and Principal violates the Equal Pay Act;" and that its conduct "is willful and wanton." Doc. 6, ¶¶ 57, 64, 65.

Moreover, to find that the District waived this defense would be a rigid interpretation of Fed. R. Civ. P. 8(c) that is disfavored. This Court should "eschew[] a literal interpretation of the rule that places form over substance . . . and instead h[o]ld that [w]hen an affirmative defense is raised in the trial court in a matter that does not result in unfair surprise . . . technical failure to

comply with Rule 8(c) is not fatal." *First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 622 (8th Cir. 2007) (internal citations omitted) (internal quotation marks omitted). Here, Plaintiff is not unfairly prejudiced—she has been on notice since the outset that the District argued its pay decisions were based on administrative experience and seniority in the position, and thus the District acted in good faith without discriminatory animus.

That the defense was raise in the proposed final pretrial order itself also puts the Plaintiff on notice and gives sufficient time and opportunity to present evidence rebutting the District's good faith defense at trial, assuming the jury finds against the District on liability. *See, e.g. Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983) (*per curiam*) (statute of limitations defense not waived, despite its omission in the defendant's pleadings, because it was raised in the pretrial order at "a pragmatically sufficient time" for plaintiff to respond without prejudice); *Expertise, Inc. v. Aetna Finance Co.*, 810 F.2d 968, 973 (10th Cir. 1987); *Jenkins v. Carruth*, 583 F. Supp. 613, 615 (E.D. Tenn. 1982), *aff'd without opinion*, 734 F. 2d 14 (6th Cir. 1984 (finding statute of limitations defense not waived when raised in pretrial order, but not in answer); *Fitzgerald v. Mallinckrodt, Inc.*, 681 F. Supp. 404, 405 (E.D. Mich. 1987).

Defendant's Section V, ¶3a is therefore not waived, and is properly included in the Pretrial Order as an issue for this Court to determine.

## DISPUTED ISSUES OF FACT FOR THE JURY

### III.   This Court Must Adopt Defendant's Issues of Fact for the Jury Where Plaintiff's Issues of Fact for the Jury Are Overly Broad and Do Not Properly State the Issues for Trial

In Section V, Paragraphs 4a-4e, Plaintiff sets forth issues of fact for the jury that substantially mirrors the Federal Civil Jury Instructions for the Seventh Circuit.  The broadness of Plaintiff's proposed issues of fact vitiates the objective of a pre-trial order—to narrow the issues and

expedite the trial—and thus should not be used by this Court to define the trial proceedings. Rather, Defendant's proposed issues of fact for the jury properly encompass the disputed factual issues and the elements of both Plaintiff's claims and the District's defenses, and should be adopted by this Court in their entirety.

The pretrial order is the controlling document for trial. *RK Co. v. Harvard Scientific Corp.*, 2007 WL 4150317 (citing *Rockwell Intern. Corp. v. U.S.*, 127 S. Ct 1397, 1409 (U.S. 2007).  The pretrial order is treated as superseding the pleadings and establishes the issues to be considered at trial." *Gorlikowski v. Tolbert*, 52 F. 3d 1439, 1444 (7th Cir. 1995). As such, claims, issues, defenses, or other theories of damages, not included in the pretrial order are waived even if they appear in the complaint. *Wilson v. Muckala*, 303 F. 3d 1207, 1215 (10th Cir. 2002). A pretrial order is a critical tool for "narrowing the issues and expediting the trial." *See In re Maurice*, 21 F. 3d 767, 773 (7th Cir. 1994). The court relies on the final pretrial order and the materials filed pursuant to it to be properly prepared for trial. Far more important, the parties depend on the final pretrial order for their own trial preparation: they expect to know in advance the witnesses they will hear and the exhibits they will see. And rightly so. Compliance with the pretrial order prevents the proverbial "trial by ambush" that the Federal Rules of Civil Procedure are designed to prevent. *See In re McAniff*, 2004 WL 163049 at *1 (N.D. Ill. 2004).

While the District will not, and cannot, go so far as to say that Plaintiff's factual issues for the jury constitute the "trial by ambush" contemplated in *McAniff*, it is clear that as currently drafted, Plaintiff's issues for the jury to determine are so broad as to render the final pretrial order ineffective. Pattern jury instructions have their time and place in the course of litigation, but this is not that time. As noted, the final pretrial order supersedes the pleadings and serves as the building block around which a party plans its trial strategy, including potential evidentiary

objections. In using pattern jury instructions, Plaintiff attempts to circumvent her burdens of proof and ignores entire elements of her Title VII and Equal Pay Act claims against the District. We address our issues with each of Plaintiff's enumerated issues in turn.

A.     In Section V, ¶4a, Plaintiff states: "Title VII: Whether Plaintiff has proven by the preponderance of the evidence that Defendant paid Plaintiff less as Assistant Principal than it paid men because of her sex."  This ignores a key element of a Title VII claim for wage discrimination—that Plaintiff must demonstrate that she was paid a lower salary than similarly situated male. That then begs the question—which men? As drafted, Plaintiff could attempt to compare the salaries of *any* male administrators to her own salary as Assistant Principal for the 2012-2013 school year. To properly frame this case for trial, Plaintiff must be limited to her alleged male comparators in the Assistant Principal and Assistant Principal/Athletic Director positions (Thomas, Lanxon, Becker, Houchins). Defendant's Section V, ¶5b addresses that issue and should therefore be adopted in the pretrial order.

Moreover, Plaintiff's issues ignore the well-established burden-shifting framework for Title VII cases under *McConnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If Plaintiff is able to satisfy her initial burden, the District must articulate a legitimate, non-discriminatory reason for the alleged adverse employment action. It has been the District's position since the outset of this litigation that administrator salaries are based upon, among other things, a candidate's administrative experience and seniority in the position. Defendant's Section V, ¶5b properly addressed that issue and must therefore be adopted in the pretrial order.

B.     In Section V, ¶4b, Plaintiff states: "Title VII: Whether Plaintiff has proven by a preponderance of the evidence that Defendant paid Plaintiff less as Principal than it paid men because of her sex." Plaintiff's Issue 4b also ignores the that she must prove that a similarly-

situated male was paid more than she was as Principal, and fails to define the proper comparator as alleged in her complaint, Derek Hacke. Issue 4b further ignores the District's burden to articulate a legitimate, non-discriminatory reason for the alleged pay disparity. As noted above, this issue must be articulated in the pretrial order so that the parties' respective burdens are clear and evidence may be presented, and objected to, at trial in a meaningful and objective manner.

Defendant's Section V, ¶¶5c, 5d properly address these issues and must therefore be adopted as part of the court's final pretrial order.

C.     In Section V, ¶4c, Plaintiff's outlined issue states, "Whether Plaintiff has proven by a preponderance of the evidence that she did work that was substantially equal to male employees at Highland High School; that Plaintiff and a male employee did their jobs under similar working conditions; and that Defendant paid Plaintiff less money than a male employee doing substantially equal work." Plaintiff's ¶4c is plagued by the same obstacles as ¶¶4a and 4b. It fails to narrow the issues with respect to Plaintiff's alleged comparators for the Assistant Principal and Principal positions, nor does it distinguish which position she argues she was paid less for. For example, Plaintiff cannot compare her work and compensation as Assistant Principal to the work and compensation of Derek Hacke as Principal. In addition, there must be evidence presented on whether the Assistant Principal position held by Plaintiff required the same skill, effort and responsibility as the Assistant Principal/Athletic Director position held by Lanxon and Houchins.

These issues should be narrowed as set forth in Defendant's Section V, ¶¶5a, 5f, and 5g.

D.     In Section V, ¶¶ 4d and 4e, Plaintiff's issues are: "Whether Defendant has proven by the preponderance of the evidence that it paid Plaintiff less as Assistant Principal than it paid male Assistant Principals because of a factor other than sex, administrative experience," and "* *

* that it paid Plaintiff less as Principal than it paid a male Principal because of a factor other than sex, administrative experience," respectively. While these issues properly state the standard, they are, at least in one respect, too narrow.

Administrative salary decisions are based upon administrative experience *and* seniority in the position. For example, when comparing Plaintiff's salary as Assistant Principal to that of her predecessor in the position, Barry Thomas, the District will rely on evidence that Barry Thomas held that position for 26 years prior to his retirement, thus his salary is indicative of (and commensurate with) his seniority as an administrator and the year to year salary increases he received over his time in the position. This is an integral part of administrative salary determinations, and the District must be able to present evidence and testimony to that effect. Defendant's Section V, ¶5e properly defines this issue and should be adopted in the final pretrial order.

Conversely, parts of Plaintiff's ¶¶4d and 4e are too broad. Plaintiff does not name her alleged comparators. It must be clear that compensation differentials between Plaintiff as Assistant Principal and Thomas, Lanxon, Becker and Houchins when they held the Assistant Principal or Assistant Principal/Athletic Director positions are based upon a factor other than sex. The same is true of the compensation differential between Plaintiff as Principal and Hacke as Principal. Again, it is important to narrow the issues with respect to the alleged comparators as initially set forth in Plaintiff's complaint. Defendant's Section V, ¶¶5f and 5g, respectively, properly address that issue and should be adopted in the final pretrial order.

E.     Finally, notably absent from Plaintiff's proposed issues of fact for the jury is any mention whatsoever of intentional discrimination. "Proof of intentional discrimination is

14

required under a disparate treatment analysis." *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F. 3d 1015, 1036 (7th Cir. 1998); *Fallon v. State of Illinois*, 882 F. 2d 1206, 1213 (7th Cir. 1989).

Defendant's ¶¶5h and 5i should therefore be adopted in the Court's final pretrial order.

## IV. CONCLUSION

Because the good faith exception to liquidated damages is not an affirmative defense required to be pled, the District respectfully requests that this Court find that it did not waive this issue and adopt Defendant's proposed issue of law as set forth in Section V, ¶3a as part of the Court's final pretrial order in this matter. The District further requests that Defendant's proposed issues for the jury as set forth in Section V, ¶¶ 5a-5i be adopted in their entirety as part of the final pretrial order. Finally, the District respectfully requests that this Court further address evidentiary issues with respect to Plaintiff's exhibits, including summary exhibits identified as Exhibits 122-131 in a pretrial conference as the Court deems fit.

Respectfully Submitted,

**BOARD OF EDUCATION OF HIGHLAND COMMUNITY UNIT SCHOOL DISTRICT NO. 5**

By:   /s/ C. Frazier Satterly
       One of the Attorneys for Defendant

Jason T. Manning
Hodges, Loizzi, Eisenhammer,
  Rodick & Kohn LLP
3030 Salt Creek Lane, Suite 202
Arlington Heights, IL 60005
(847) 670-9000
(847) 670-7334 (Fax)
jmanning@hlerk.com

C. Frazier Satterly
Hodges, Loizzi, Eisenhammer,
  Rodick & Kohn LLP
401 SW Water Street, Suite 106
Peoria, IL  61602
(309) 671-9000
(847) 670-7334 (Fax)
fsatterly@hlerk.com

477503_1

## CERTIFICATE OF SERVICE

C. Frazier Satterly, an attorney, certifies that on January 16, 2018, a true and correct copy of the foregoing **Defendant's Trial Brief** was electronically filed with the Clerk of the U.S. District Court of the Southern District of Illinois, Eastern Division, via its CM/ECF System and was electronically served to the individual(s) listed below:

> Donna L. Harper
> Jessica M. Scales
> Sedey Harper Westhoff, P.C.
> 2711 Clifton Avenue
> St. Louis, MO 63139
> (314) 773-3566
> (314) 773-3615 (fax)
> dharper@sedeyharper.com
> jscales@sedeyharper.com

By:   /s/ C. Frazier Satterly
     One of the Attorneys for Defendant

| | |
|---|---|
| Jason T. Manning | C. Frazier Satterly |
| Hodges, Loizzi, Eisenhammer, | Hodges, Loizzi, Eisenhammer, |
|   Rodick & Kohn LLP |   Rodick & Kohn LLP |
| 3030 Salt Creek Lane, Suite 202 | 401 SW Water Street, Suite 106 |
| Arlington Heights, IL 60005 | Peoria, IL  61602 |
| (847) 670-9000 | (309) 671-9000 |
| (847) 670-7334 (Fax) | (847) 670-7334 (Fax) |
| jmanning@hlerk.com | fsatterly@hlerk.com |